Good morning. I'm Christopher Sitter. I'm here on behalf of the judiciary under Arturo Aldaco-Quezada. The question before the court today is whether a knowing assault committed in Arizona under Statute 13-1203, Game 1, is either a crime involving moral turpitude or a crime of domestic violence. For the reasons I won't go through, I think the only answer is no. This is a case that the immigration judge looked at many years ago, in about 2012, when he made his decision. The law has changed quite substantially since then. The judge immigration does apply on. So are you going to take a look into the statute? There was a presumption, I think, amongst the parties that are not going to do it. Could I focus on something? This fellow's conviction was for a Class 1 misdemeanor assault. Is that correct? And this is the one that threw his keys at his wife and caused the trademark? Yes. What he does is a Class 1 misdemeanor assault. Well, Arizona divides the Class 1, obviously, and the intent is in three different levels. Intent is intentional, going, or reckless intent. Reckless is out as far as a crime involving moral turpitude or a crime of violence. And there are lots of reasons, lots of cases. Even now that you're voicing reckless is out, if there is, in fact, some sort of physical injury, such as the red mark. I didn't hear that question. I looked at the voicing. I think voicing is expressly limited to the 922G9 statute. I don't recall that it was expressly limited. The most I recall is that it's a different statute, and they said we're not reaching the question whether it's limited or not. Well, I think you have to read. You can't just read voicing. You also have to look at cancelment. And I think when you look at cancelment, which looked at the same statute, 18 U.S.C. 922G9, also a U.S. Supreme Court decision, Justice Sotomayor did a great favor to all immigrants in this country because in footnote number four she stated that the cancelment interpretation does not extend to 237A-2E, which is what we're dealing with specifically in this statute. So while on the face of it, voicing and cancelment are powerful arguments for the government, Justice Sotomayor, very prescient in her footnote number four, took this and issued it before the court today. I think out of voicing, out of cancelment, in footnote number four it says it doesn't apply. If you look at it, I think it's justicially as dissenting. Cancelment, he was in the doctrine of statutory consistency, trying to always define a term consistently through the statute. And this is the problem that he was looking at. Well, we shouldn't take the same language and interpret it differently statute to statute. But, in fact, that's what the Supreme Court has done. If you look at the decisions of Leal, Cobb, cancelment, and voicing, and so looking at footnote number four, Justice Sotomayor's there, then this is not the type of violence that would lead to a ground of removability under 237A-2E. We haven't talked about Johnson yet. We've heard about Johnson. We haven't heard about his physical injury and how he took on the force of the process of criminal violence. What's very interesting, I think, if you look at Arizona, there's fortunately a lot of Arizona law under A-1. And Arizona law makes it clear that there's no touching required for a conviction under A-1. It's injury-focused statute. It's kind of the mirror opposite of A-3, where there isn't touching but no injury required. We're under A-1. There's an Arizona case, and we studied it in Ray, Jeremiah, and T, and the court there does this exam where they cite examples of how A-1 can be violated without touching. Not touching doesn't mean nonviolent. For example, if you shoot somebody, you don't have to touch them. You can do it from whatever distance you can in your target group. Absolutely. And you come to them, that doesn't mean it's nonviolent. Absolutely. We have noted in our supplemental brief in the government, in their supplemental brief, that you can cite a whole list of cases where there was violence. Obviously, you could violate the statute by violence and touching and injury, but it doesn't mean that every type of violation in this statute requires it. We've seen it in cases, and again, A-Ray, Jeremiah, and T notes that withholding medication, for example, is a way that A-1 could be violated. No touching is required at all under that statute. And I take an issue with the oil supplemental brief because I think they're mistaken in arguing that indirect means like poisoning is sufficient for an A-1 violation. It's not. I think this is really incorrect. That would be under A-3 in Arizona. There's two cases on the point. I already cited in Ray, Jeremiah, and T, but also in Ray, P, and E, he thinks it also was A-1. Yeah, it was A-1. You may be troubled in an earlier stage of your argument. Okay. Suppose somebody threw a large rock at the wife or husband or boyfriend or girlfriend. And it might be reckless because they're not real good at throwing. They don't know if it's going to hit or miss. They don't know if it's ball or sprite. But they're throwing the big rock at the domestic partner. Why shouldn't that be treated as a crime of violence? I'm trying to think. Not just you. Yes, you are seeing this thing with people. And you are creating exposure. But should it be? In what circumstance? I mean, this morning before, it made very clear that this is an elements-based approach. You have to look at the elements of the statute, not necessarily the facts of what happened. In fact, you're not supposed to look at that at all. To make your analysis, even under the modified categorical approach, a modified categorical approach goes through. But you've looked at what subsection statute is violated. I think that's true. And here, what my initiative started, and my argument is that there was a presumption back in 2012 that the modified categorical approach applied to this. So everybody went to the documents of Reverend Shepard and looked at the complaint. If you look at the actual conviction document, it just cites the statute, 1203. It doesn't even give you gate one. If you look at the complaint or information, it cites gate one. And it said, was it knowing? Was it knowing? Not reckless? Not intentional? If it were intentional, it would go full-side. I think the government has a good argument. It constructs a side. We have the argument here. We're in the middle. We're under knowing. Under the modified categorical approach, the complaint is considered the complaint that it pleaded to and treated as establishing a fact. And the complaint says, intentionally or knowingly caused physical injury to knowing parties, not groups, in violation of subsection A-1. Right? It's knowing. And it's also causing physical injury. Arizona defines knowing as a general negligence standard. Arizona by statute, 13-105-10-B, but we know that it's a general negligence standard when it stands. And there was the expected negligence when the candidate accused him that was dealing with a subsection 3 crime, that you could commit subsection 1 violation by withholding medicine. But, you know, let me explain the case here. That's not the case here. Now, each of your keys will cause your red mark, I think. I'm not sure if that's the case. I think that's the reference to that question. Whether this is just, like, the one car key in the place that the automatic button follows for a subsection J, or there's a key G, which is maybe a couple dozen keys on a pink heming ring or something in between. I don't believe it does. The key code itself, it's a distinguished red type of key, and the key code is kind of modeled. They were two of these ones. It's soft in other terms. These are the arrests which we haven't spoken about. But if you look at the code, it doesn't really give you very good information. It's a little garbled. There's really nothing in the complaint. I was not the trial counsel, so part of the record's not going to tell it to me. But under the knowing men's right, if there is a case on the flight that this court has already decided is humble where the court looked at a Canadian statute, and they said that knowing is basically a negligent standard. The knowing violation, therefore, should not be a crime of armed or alternative, nor should it be a crime of violence. That would not be sufficient. If you look back to the appeal trial where there has to be Fernandez-Ruiz, this court said there has to be a willful violation. The knowing violation is not a willful. Uncertainly, the Arizona statute makes that distinction in A1 very nicely in three different subsections. What you have to complain is in knowing. We're not looking at willful violations. I'm sorry, what are willful violations in this? Just making the distinction that it's not. That was your argument. My argument is that there are typically willful violations of law means knowing that you're acting in violation of law. You can see where willfulness is at or is all that matters is whether it's intentional. Right, it doesn't matter to the analysis. In this case, we're not in there. We're in the knowing, and I'm just making that distinction because the A1 statute has those three subsections under the modified categorical approach where I'm in knowing at the best. That's the highest level of intent in the statute. We don't want to get into the willful. That's also very much in favor of the petitioner in this case. Um, um... There's other cases also. For instance, Galeana Mendoza's another case. It's very much a point regarding the CFT issue because in Galeana Mendoza's case, it required a willful act plus an injury to make the crime involved in moral turpitude where he hit Guerrero at the end of the aisle and everything. All the cases make it clear also that the special relationship alone does not transform a crime into a crime involving moral turpitude, that there has to be something much more than that. Um, here to announce the resisting arrest conviction under Arizona's statute 13-2508, it's not a CFT. There's a case right on the line, cited under brief force on Guerrero, and he settles this matter in the petitioner's favor. There, this court found, looking at Arizona State law, State Melee, that's a minor swaffle case and that's sufficient force for a violation of resisting arrest. We see it's literal force is sufficient to constitute a conviction in Arizona for resisting arrest, and that's not sufficient force for a crime involving moral turpitude. Lastly, if this court does find that we won't be able to honor it. So, it's looked down to whether or not the domestic violence crime was committed. Yes. It's looked down to whether or not the domestic violence crime is defined violence, right? Because it was not even discussed whether moral turpitude in the record, right? We did contest whether it's a crime or not. You did? We did. You did? Um, you know, I looked at the record. I think the record is fairly read. He does contest it. He does raise the domestic violence. He raises it. He does raise the domestic violence. You raised it. The government does not argue in their red brief that either crime was a crime of moral turpitude. Oh, in some group? No, in this brief. So, they just waived that argument. If they have an argument, then certainly it would be waived. Yeah, so we don't need to talk about moral turpitude. What we're down to is whether throwing the keys was a crime of domestic violence, right? Right. But you're down to whether throwing the keys was a case in force. In looking at Councilman in the front, I think that petition would prevail on that point. Um, the last tag I was going to see if the court would find a scanty, but obviously that's off the table. In the future, depending on these decisions, it's not even in play. I have a little bit of time left, and there are other issues that are referred to in the bottom here. Yes. Good morning again. Good morning.  Good morning. Good morning. Good morning. I'm going to introduce the court, Rebecca Nahas, for the United States Attorney General. Petitioner's conviction for assault interception, A1, the Arizona assault statute, is a crime of domestic violence. So, beginning with the requisite intent, the court in Fernandez-Ruiz, this court in Fernandez-Ruiz, said that only reckless intent is insufficient to amount to use of physical force. And so, even if YC has not overruled Fernandez-Ruiz, which I don't think we need to reach in this case, the statute in the next question is, so it's not categorically a crime of violence because there's recklessness. The next question is whether the statute is divisible and whether A1 specifically is divisible by intent. So, whether intent is intentionally, knowingly, or reckless, means or elements of committing the assault offense. And I think clearly under Mathis and Apprendi, A1 is divisible. So, looking at the statute on its face, subsection B says that a Class I misdemeanor is intentionally or knowingly causing physical injury. And because more severe penalties attach based on intent, it's necessarily an element that the government has to prove beyond a reasonable doubt under Apprendi. And therefore, under Mathis, the statute is divisible. Wait a minute, I missed something there. Sorry. Why can't the Arizona government convict somebody of domestic violence under A1 for recklessly causing physical injury? They certainly can. I was just pointing out, Your Honor, that in order for it to be a Class I misdemeanor, it has to be intentionally or knowingly. And when it's intentionally or knowingly as a Class I misdemeanor, there's a higher severe penalty. But if it was convicted of Class I, it wasn't intentional or knowingly. Exactly. And under Mathis, it is an element of intent. So the next question, now that we know the statute is divisible, is under the modified categorical approach, we have the agreement where a petitioner pleads guilty to a Class I misdemeanor, potentially or knowingly. And turning to Petitioner's argument that the knowingly mens rea is insufficient, I think this is now well settled. Fernandez-Ruiz only said reckless was insufficient, and when it talked about the modified categorical approach, they said the government hadn't proven its burden, showing that he had been convicted of knowing or intentional conduct, which suggests that knowing or intentional would have been sufficient under the modified categorical approach to sustain a crime of violence. But even if we didn't have Fernandez-Ruiz, we have Castleman, which said that intentional or knowing is use of physical force. And while Castleman discussed a different statute than the one at issue in our case, the words are identical. And even if we didn't have Castleman under the... What did Castleman help you with? Castleman said that intentional or knowing is a use of physical force. So intentionally or knowingly causing physical injury would be use of physical force. So was in Fernandez-Ruiz a crime of moral turpitude case, not a crime of violence case? There's two Fernandez-Ruiz's in the one, and so I was referring to the Ombak decision of Fernandez-Ruiz, which related to crime of domestic violence. There's then also a remanded... So he was discussing whether or not a crime of domestic violence was a crime of moral turpitude? No, you're under the Ombak decision that I'm referring to was discussing whether Arizona domestic assault was a crime of domestic violence under the INA. And turning back to the petitioner's argument about knowing, Leocal said that use of physical force has to be a volitional act, and it also has to be active employment of force. And I think the easiest way to understand this is... I like the examples that the Supreme Court used in Wasi with the plate... When you're doing it by accident or negligently, your hands are still beating, the plate drops, it might hurt someone by accident. And by no means is that volitional or an active use of that plate against that person. That's negligence. That's negligence, and so that's distinguishable. That's all Leocal was concerned with. What we have is knowing. Knowing is throwing the plate, knowing that it will cause injury. That's very different than what Leocal was concerned with. And so that's certainly an active employment of that plate against your wife, and it's certainly volitional. That's right, but we have knowing in our case. But Your Honor's point goes to whether Wasi has now overruled Hernandez-Ruiz, but I don't think we need to get there in this case. And then turning to the second question of whether intentional or knowingly causing physical injury. We don't have the record of this in any way because he never made the case. Well, we have under the... At this point, it was an intentional crime. That's right. Under the conviction records, he was convicted of intentionally or knowingly causing physical injury, so we don't really need to decide the Wasi issue. And then turning to the Johnson violent force question, I would argue that... When selling these, is there anything in the record that was thinking, you can have a Mercedes key and that's just one piece of plastic with a chip in it, or you can have two, and there's a keychain. Is there anything in the record that says what he threw out? I didn't find anything like that, Your Honor, and I don't think it matters to the modified categorical approach. So we just look at the elements and the least culpable conduct under the norms. So with the violent force, I think the Ninth Circuit has already decided that issue and Saron Sanchez, which it predated Johnson, but it did use the standard of physical force of requiring violence, and Saron Sanchez was only overruled by Fernandez's release to the extent that Saron Sanchez allowed reckless assault to be a crime of violence. The other part of Saron, the part that said, intentionally or knowingly causing physical injury necessarily includes use of force, of violent force, I think remains a flaw. But we also... I mean, just logically speaking, I don't think that you can cause physical injury without violent force having been used, and that is consistent with Johnson's definition of violent force, which is force that causes pain or injury. So it could be even pain. We have injury here. So because the statute requires causing physical injury, it must be necessarily preceded by violent force. And addressing Petitioner's argument that indirect force, like withholding medication, suggests that violent force wouldn't be used, the Supreme Court in Castleman decided that issue, and while Castleman was talking about a different statute, this court in Arellano has already ruled that indirect force in the context of an immigration case is sufficient use of physical force under Johnson. And the reasoning is that... So with the poison example, it's not the sprinkling of the poison that is the force, but it's rather the act of employing the poison, knowingly as a device to cause physical injury, that makes it a use of force, violent force under Johnson. And the... Your Honour, Judge Bourdalois corrected the government. It's asked that the court rule on the crime of domestic violence question, and if it disagrees with the government, that it remand the case for reconsideration of the crime of... Well, he is seconded by the crime of moral turpitude. It seems like the government had its chance, aimed and forfeited it in the appeal of this case on crime of moral turpitude. I'm not clear on why he's remanded for evaluation of crime of moral turpitude. If you were to lose on domestic violence, it would just give you a second chance for the same thing that's already been litigated, decided, and appealed to. Your Honour, the reason that we're asking for a remand on that question is because the law has changed. There's been an intervening case law with regard to whether resisting arrest in Arizona has the sufficient level of harm to rise the level of a crime involving moral turpitude. Now, is that authority that came out after the red brief? No. Then you point that out, too, because you didn't raise that in your red brief. You're right, Your Honour. We didn't cite the case that we heard about as far as Cordero. We did not cite that. Right, but I'm just saying, if you had wanted us to remand, you should have said something about it in the red brief. Oh, we did. We have a footnote where we asked the court to remand for the CIMT question if it disagrees with the crime of domestic violence. What does it say? He said, we used some parentheticals to hopefully guide the court. We cited the matter of Dinesh, which is a board decision. Did you see in the footnote that the Arizona law changed so that I did not have the opportunity to consider the Arizona laws, and who is it? I don't believe you did, Your Honour. There's a footnote that said... Let me point to Your Honour one second. On page 16 of the red brief, footnote 6... Well, so you didn't cite the case you're arguing now? Right. Your Honour, essentially the petitioner made the argument, and so we agreed with the petitioner that the case needs to be sent back to be looked at again in light of Cordero v. Flores-Cordero. And if Your Honours would like me to go any further with regard to the change in the law or any other questions? Well, I think I have some questions. Mr. Stender? Yes, Your Honour, I wanted to drive home because I think it constitutes more intentional knowing on page 184 of the college brief, he was committed to knowing. There's no intentional. That's the factual basis he's giving, and Mr. Parker gives the basis of the defense attorney and has to come to, same time, same place. He, Arturo Vega-Casada, knowingly caused this injury, knowingly. There's no intentional. I just wanted to make sure that that's very clear to the court, that there's really no issue with what type of force was used. The intent is just being true. Also, I think an important case for this court to consider is Upholth, because in Upholth, they looked at a negligence standard, and it was not found to be sufficient for a claim involving moral turpitude under an assault statute. It was a Canadian statute, but that's what was looked at by this court. They said, no, he's a negligence standard, and that's not sufficient for a claim involving moral turpitude. And the reason they said this is because it's kind of a double-edged sword. It's the same team in Virginia. Also, they grew up in domestic violence, so I think Upholth... That's the way it appears. I'm 23, but I don't think it's injurious to moral turpitude. Well, he talks about intent, so I think that's where I'd like the court to look at it, that if it's not sufficient for sanity, I don't think it should be sufficient for a crime involving moral turpitude, because this is a court case, according to which it has to be brought over to possess the full force of moral turpitude. Yeah, it's the evil intent versus the positive language. Marjolein O'Sullivan has also cited it on the sanity. I hope that's all you had. All right. All right. Thank you, counsel. Our top numbers of sessions will be submitted in Octavia. Thank you.  Thank you.
judges: Kleinfeld, Wardlaw, Peterson